WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roselle Gallego Saba,<br><br>            Plaintiff,<br><br>v.<br><br>Occidental Fire & Casualty Company of North Carolina, et al.,<br><br>           Defendants. | No. CV-14-00377-PHX-GMS<br><br>**ORDER** |

Pending before the Court are the cross motions for partial summary judgment of Plaintiff Roselle Gallego Saba and Defendant Occidental Fire and Casualty Company of North Carolina. (Docs. 25, 27.) For the following reasons, Defendant's Motion is denied and Plaintiff's Motion is granted in part and denied in part.

## BACKGROUND

In November 2006, Plaintiff Roselle Gallego Saba purchased a house in Scottsdale, Arizona. From the time that Saba moved into the house, she began to experience severe headaches, nausea, and fatigue. Eventually, doctors diagnosed her with permanent brain damage and heart damage. In January 2010, Saba discovered the presence of carbon monoxide fumes in the air conditioning vents, caused by a water heater that was placed in an unvented utility closet with the burner improperly de-rated for a gas and air mixture. The utility closet was located adjacent to an air conditioning handler that delivered air into the master bedroom. As a result, Saba experienced sustained carbon monoxide poisoning. Her impaired mental and physical condition

caused her to lose her employment and eventually her house when she could no longer afford mortgage payments.

The water heater had been installed by Plumbing Specialists ("Plumbing"). Plumbing was insured by Occidental Fire & Casualty Company of North Carolina, ("Occidental"), under a Commercial Liability Policy (No. CP00015734) (the "Initial Policy") effective February 14, 2006 to February 14, 2007 and under a renewal policy (No. CP00079089) (the "Renewed Policy") effective February 14, 2007 to February 14, 2008. Both policies cover claims based upon bodily injury.

Saba brought suit in state court against Plumbing for its negligent installation of the water heater. Plumbing's attorney requested Occidental to intervene, but Occidental declined to either defend the suit or provide indemnification, citing to a pollution exclusion in the policies.

Plumbing then entered into a *Damron* agreement with Saba, under which Plumbing admitted fault, stipulated to entry of judgment against it, and assigned all rights against Occidental under the policy to Saba in exchange for Saba's covenant to not execute the judgment against Plumbing. *See Damron v. Sledge*, 105 Ariz. 151, 155, 460 P.2d 997, 1001 (1969); *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 119, 741 P.2d 246, 252 (1987) (noting that the limitation on such agreements is that they "must be made fairly, with notice to the insurer, and without fraud or collusion on the insurer"). The *Damron* agreement enabled entry of judgment against Plumbing in the amount of $2,000,000.00—the amount of coverage in the policies for the years of 2006 and 2007.

Saba brought suit again in state court against Occidental, seeking declaratory judgment based on the policies and also recovery under a breach of contract theory. (Doc. 1, Ex. A.) Occidental removed the case to this Court and now requests summary judgment that the pollution exclusion in the policies precludes Saba's claims. (Docs. 1, 27.) In the alternative, Occidental requests summary judgment that the only applicable policy is the Initial Policy and not the Renewed Policy. (Doc. 27.) Saba requests summary judgment that the pollution exclusion did not apply and that both the Initial and

Renewal Policies cover Saba's injuries. (Doc. 25.)

**DISCUSSION**

**I.     Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (original emphasis omitted) (quoting *Anderson*, 477 U.S. at 250).

Interpretation of an insurance contract is a question of law. *Benevides v. Arizona Prop. & Cas. Ins. Guar. Fund*, 184 Ariz. 610, 613, 911 P.2d 616, 619 (Ct. App. 1995).

**II.    The Pollution Exclusion**

Both the Initial and the Renewed Policy contain a clause entitled the "Total Pollution Exclusion Endorsement," which states that the insured may not recover for the following claims:

> f. (1) "Bodily Injury," "Property Damage" or "Personal Injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
>
> (2) Any loss, cost or expense arising out of any:
>
> > (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Pollutants; or

> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.
>
> Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

(Doc. 25, Ex. B, at 35.) Arizona courts have very narrowly interpreted a pollution exclusion which is in all relevant respects indistinguishable from the pollution exclusion in this case. *Keggi v. Northbrook Property & Casualty Insurance Co.*, 199 Ariz. 43, 13 P.3d 785. (Ariz. App. 2000). In *Keggi*, an insurer sought to apply the pollution exclusion to a plaintiff's claims for injuries caused by ingesting "total and fecal coliform bacteria" contained in supposedly potable water *Id.* at 44–45, 13 P.3d at 786–87. The court held that the plain language of the policy definition for pollution did not include bacteria and thus the pollution exclusion did not apply. *Id.* at 50, 13 P.3d at 792. But, the court went on to hold that even if the language of the policy defining pollution "could be interpreted broadly enough to include 'bacteria,'" . . . "the purpose of the clause, public policy and the transaction as a whole, demonstrate that the language [of the pollution exclusion] nevertheless should not be interpreted to preclude coverage for bacterial contamination absent any evidence that the actual contamination arose from traditional environmental pollution." *Id.*

Thus, the court determined that the standard pollution exclusion did and does not apply to exclude damages for physical injury that arose in contexts other than traditional environmental pollution. In so holding the Keggi court relied on (1) the language and history of the pollution exclusion, (2) public policy, and (3) the transaction as a whole. *Id.* at 48, 13 P.3d at 790.

First, the *Keggi* Court observed that "the exclusion clause appears to describe events, places, and activities normally associated with traditional environmental pollution claims." *Id.* The court stated in relation to the language of the exclusion that:

- 4 -

> The[] provision[] appear[s] to be directed at industrial insureds who must handle, store, and treat "hazardous wastes" in conducting their daily operations. Similarly, the clause . . . appear[s] to be intended to preclude coverage for clean-up operations ordered under RCRA, CERCLA, and other federal or state environmental laws. Thus, the exclusion's context confirms that the drafters intended it to apply to traditional "environmental pollution" situations and substances.

*Id.* at 48–49, 13 P.3d at 790–91.

The language from the clause at issue here is not meaningfully distinct. The exclusion here, as it did there, applies to the "discharge, dispersal, seepage, migration, release or escape of pollutants." (Doc. 25, Ex. B, at 35.) Many of these words are borrowed directly from environmental statutes. *See e.g.*, *Nautilus Ins. Co. v. Jabar*, 188 F.3d 27, 30 (1st Cir. 1999) ("[T]he terms used in the exclusion clause, such as 'discharge,' "dispersal,' 'release' and 'escape,' are terms of art in environmental law and are generally used to refer to damage or injury resulting from environmental pollution."); *Atl. Mut. Ins. Co. v. McFadden*, 413 Mass. 90, 92 (1992) (same). Just as in *Keggi*, the language in the pollution exclusion here "appear[s] to be directed at industrial insureds who must handle, store, and treat 'hazardous waste.'" 199 Ariz. at 48, 13 P.3d at 790. For example, the exclusion precludes liability from government agencies or from others for "testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants." (Doc. 25, Ex. B, at 35.)

The *Keggi* court further explained that the history behind exclusion clauses supports the conclusion that they were "intended to exclude coverage for causes of action arising from traditional environmental pollution." 199 Ariz. at 49, 13 P.3d at 791. "Historically, the pollution exclusion clauses arose in CGL policies in the 1970's, in response to "the insurance industry's increased concern about pollution claims [attributable to] environmental catastrophes that occurred during the 1960s." *Id.* In addition, other courts have found that exclusion clauses are "traditionally associated with environmental pollution." *Nautilus*, 188 F.3d at 31; *see also Continental Cas. Co. v.*

1 *Rapid-American Corp.*, 80 N.Y.2d 640, 593 (1993); *Molton, Allen & Williams v. St. Paul*
2 *Fire & Marine Ins.*, 347 So.2d 95, 99 (Ala. 1977). In the present case, Occidental has not
3 pointed to any authorities suggesting that the exclusion clause has a history that is distinct
4 from that of other pollution exclusion clauses.

5 After reviewing this history, the *Keggi* court concluded that "public policy
6 supports an interpretation limiting the clause to its initial, intended purpose of excluding
7 coverage for traditional environmental pollution-related claims." 199 Ariz. at 49, 13 P.3d
8 at 791.

9 Finally, the court in *Keggi* held that "the transaction as a whole supports a finding
10 that the exclusion does not apply." 199 Ariz. at 50, 13 P.3d at 792. The court looked at
11 the circumstances surrounding the transaction and found that the policy "contemplated
12 the operation of golf clubs and restaurants, and even the provision of water through its
13 water company." *Id.* It determined that "[w]here the insured's operations include
14 distribution or serving of water, an insured would reasonably expect to be covered for
15 negligently distributing or serving contaminated water which causes an illness or
16 disease." *Id.*

17 In the present case, there is less ambiguity in the policy language. Carbon
18 monoxide is a gas. While, as *Keggi* noted, the phrases "irritant" and "contaminant" are
19 hopelessly imprecise, carbon monoxide is not generally considered benign—of course
20 neither is total and fecal coliform bacteria. And while Occidental's able counsel spend the
21 majority of their briefing asserting that the policy exclusion's language is less ambiguous
22 as it applies to carbon monoxide than it was as it applied to total and fecal coliform
23 bacteria, there is no basis on which they persuasively distinguish the rest of the *Keggi*
24 Court's analysis from the facts of this case. The history of the pollution exclusion clause
25 is the same. The pertinent language is all the same. So is the public policy. In this case,
26 the carbon monoxide was not a pre-existing substance; it was produced by the negligent
27 installation of the water heater itself and did not result from any efforts at environmental
28 cleanup. This takes the case out of any "traditional environmental pollution-related

claims," and thus Arizona public policy as interpreted by the *Keggi* court prevents this Court from giving the pollution exclusion the interpretation requested by Occidental. Further, the transaction as a whole, the insuring of a plumbing business, calls into question a broader application of the pollution exclusion than would arise in "traditional environmental pollution-related claims." In the present case, activities such as the installation of plumbing devices were contemplated by the policies. The scope of interpretation requested by Occidental would seemingly eviscerate coverage.

There is no dispute that Arizona law applies to this claim. After considering the Arizona public policy limitations on pollution exclusions as set forth in *Keggi,* pollution exclusions cover traditional environmental pollution claims and not the bodily injuries suffered by Saba as a result of Plumbing's negligence in the installation of a water heater. Therefore, as they pertain to the issue of whether the pollution exclusion applies to this case Occidental's Motion for Summary Judgment is denied and Saba's Motion for Summary Judgment is granted.

## II. The Renewed Policy

The endorsement for the policies limits claims for bodily injury to those that "first occur during the policy period" and excludes those that "first occur[] prior to the inception of the policy." (Doc. 25, Ex. F.) Occidental does not dispute that Saba first experienced injury as a result of the exposure to carbon monoxide during the period of the Initial Policy. However, it claims that because Saba's injury had already occurred by the time that the Renewed Policy came into effect on February 14, 2007, she may not make claims under the Renewed Policy.

Occidental's allegations highlight a genuine issue of material fact that has not been resolved by either party: the extent of Saba's injuries, if any, that occurred during, and are attributable to, carbon monoxide exposure during the Renewed Policy's period of coverage. Although Saba has provided admissible evidence that she experienced injury that occurred during at least the first policy period, it is unclear from the record whether the nature of the injury she may have experienced during the second policy period was

1 merely a continuation of injury resulting from the exposure of the first policy period, or
2 whether she experienced any further injury that is attributable to exposure that occurred
3 during the second policy period and was not the natural and continuing consequence of
4 exposure during the first period. *See Associated Aviation Underwriters v. Wood*, 209
5 Ariz. 137, 167, 98 P.3d 572, 602 (Ct. App. 2004) (interpreting "bodily injury" to include
6 the damage caused by exposure to a substance "and, even after exposure has ceased, the
7 continuing injurious process initiated thereby"). Although in her briefing Saba cites the
8 opinion of an expert to the effect that the exposure caused during the second policy
9 period produced injury that would have been independent from injury resulting from
10 exposure suffered during the first policy period, she does so without citing to any record
11 excerpt or affidavit from the expert. Thus, Saba cannot now fairly claim that such facts
12 are uncontested, because she has failed to demonstrate to the Court that they have ever
13 been asserted, let alone, unchallenged. Of course, on the other side of the equation,
14 Occidental has done nothing to establish beyond factual dispute that the exposure during
15 the second policy period did not produce independent damage to Ms. Saba.

16 Saba also asserted in her briefs that Occidental rejected a settlement offer within
17 policy limits. Again, however, Saba has not placed facts in the record which establish that
18 such a settlement offer was made and rejected; nor has Occidental provided a sufficient
19 basis on which this Court could conclude that no settlement offer for policy limits was
20 ever made. Thus, there is no basis for this Court to conclude that there are no material
21 issues of fact as to whether Saba can claim the second million dollars of available policy
22 coverage to cover her two million dollar judgment. Neither party has brought forth
23 admissible evidence to resolve these questions.

24 Both Occidental's and Saba's Motions for Summary Judgment are, therefore,
25 denied as to this point.

**DISCUSSION**

27 Saba is entitled to summary judgment on the grounds that the pollution exclusion
28 of the policies at issue were not applicable to her injuries. However, neither Saba nor

1  Occidental are entitled to summary judgment on the issue of whether the Renewed Policy
2  covered Saba's injuries.
3      **IT IS THEREFORE ORDERED** that Plaintiff Roselle Gallego Saba's Motion
4  for Partial Summary Judgment (Doc. 25) is **GRANTED IN PART** and **DENIED IN**
5  **PART**.
6      **IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary
7  Judgment of Occidental Fire & Casualty Company of North Carolina (Doc. 27) is
8  **DENIED**.
9      Dated this 16th day of December, 2014.

*A. Murray Snow*

/G. Murray Snow
United States District Judge